FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 29, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NIKKILEE ASHLEY T., <br><br>                 Plaintiff, <br><br>    v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>                 Defendant. | NO:  1:24-CV-3113-RMP <br><br> ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Nikkilee Ashley T.[1], ECF No. 8, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 16.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) of the Commissioner's denial of her claim for Social Security Income ("SSI") under Title XVI of the Social Security Act (the "Act").  *See* ECF No. 8 at 1–2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and middle and last initials.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 1

Having considered the parties' briefs including Plaintiff's reply, ECF No. 17, the administrative record, and the applicable law, the Court is fully informed. For the reasons set forth below, the Court grants judgment for Plaintiff, reverses the Commissioner's final decision, and remands the matter for further proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

### *General Context*

Plaintiff applied for SSI in January 2020[2], alleging an onset date of February 1, 2017. AR[3] 15, 195. Plaintiff was 28 years old on the alleged disability onset date and asserted that she was unable to work due to degenerative disk disease in her back, chronic pain in her lower back and hips, major depression, post-traumatic stress disorder, anxiety, bipolar disorder, and obsessive-compulsive disorder. AR 213. On July 16, 2021, the Administrative Law Judge ("ALJ") issued an unfavorable decision, and Plaintiff sought review by this Court. *See* AR 15–26. This Court remanded the matter to the agency following a stipulated motion for remand from the parties. AR 886. Pursuant to the parties' stipulation, the Court

---

[2] Plaintiff previously applied for SSI in 2009, and this Court found no error in the Administrative Law Judge's 2016 denial of Plaintiff's claim. Administrative Record ("AR") 112.

[3] The AR is filed at ECF No. 6.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 2

directed the Commissioner to provide a de novo hearing before an ALJ, followed by a new decision.  AR 887–88.

On January 23, 2024, Plaintiff appeared for a hearing on remand held by ALJ C. Howard Prinsloo in Seattle, Washington.  AR 839–41.  Plaintiff was represented by attorney Robert Tree.  AR 841.  The ALJ heard from Plaintiff and vocational expert Frank Lucas.  AR 839–54.  While Plaintiff's January 2020 application was pending on appeal, Plaintiff had filed a subsequent SSI application on March 8, 2022, and the ALJ consolidated the claim files and issued a new decision on the consolidated claims.  AR 811.

ALJ Prinsloo issued an unfavorable decision on May 20, 2024, and the Appeals Council denied review.  AR 810–30; ECF No. 1.

***ALJ's Decision***

Applying the five-step evaluation process, ALJ Prinsloo found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since January 6, 2020, the application date.  AR 813.

**Step two:** Plaintiff has the following severe impairments: spine conditions, depressive disorder, anxiety disorder, and post-traumatic stress disorder.  AR 813–14 (citing 20 C.F.R. § 416.920(c)).

**Step three:** The ALJ concluded that Plaintiff does not have an impairment, or combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 3

416.920(d), 416.925, and 416.926). AR 814. In reaching this conclusion, the ALJ considered listing 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root) and found that "the evidence reflects neither the imaging findings nor the documented medical need for an assistive device as required by [listing 1.15]." AR 815. The ALJ further considered whether Plaintiff's mental impairments are sufficiently severe to meet or equal the criteria of listing 12.04 (depressive, bipolar and related disorders) and 12.15 (trauma- and stressor-related disorders). With respect to finding that Plaintiff does not satisfy the paragraph "B" criteria, the ALJ found that Plaintiff has no more than a moderate limitation in understanding, remembering, or applying information. AR 815. The ALJ further found that Plaintiff is moderately limited in: interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR 815–16. The ALJ also found that the paragraph "C" criteria are not satisfied. AR 816.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff can perform light work as defined in 20 CFR 416.967(b) except that Plaintiff:

> can only occasionally climb ladders, ropes, or scaffolds. All other postural activities can be performed frequently; this includes climbing ramps and stairs; balancing; kneeling; crawling; stooping; and crouching. She can have no concentrated exposure to vibration or hazards. She can perform simple, routine one to three-step tasks. She can have occasional, superficial interaction with the public, and more frequent interaction with coworkers. She must work in a routine work environment with employer set goals.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 4

AR 816.  In formulating Plaintiff's RFC, the ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not fully consistent with the medical evidence and other evidence in the record[.]"  AR 819.

**Step four:** The ALJ found that Plaintiff has no past relevant work.  AR 828 (citing 20 C.F.R. § 416.965).

**Step five:** The ALJ found that Plaintiff has a limited education and was 31 years old, which is defined as a younger individual (age 18-49), on the date the application was filed.  AR 828 (citing 20 C.F.R. §§ 416.963 and 416.964).  The ALJ found that transferability of job skills is not material to the determination of disability because Plaintiff does not have past relevant work.  AR 828 (citing 20 C.F.R. § 416.968).  The ALJ further found that, given Plaintiff's age, education, work experience, and RFC, there are jobs that exist in the national economy that Plaintiff can perform.  AR 829.  The ALJ recounted that the VE testified that an individual with Plaintiff's RFC would be able to perform the requirements of representative occupations such as: marking clerk (light work with approximately 285,000 jobs nationwide), collator operator (light work with approximately 40,000 jobs nationwide), and router (light work with approximately 36,000 jobs nationwide).  AR 829.

1    The ALJ concluded that Plaintiff has not been under a disability, as defined in

2    the Act, since January 6, 2020, the date the application was filed.  AR 829 (citing

3    (20 C.F.R. § 416.920(g)).

4    Through counsel, D. James Tree, Plaintiff sought review of the unfavorable

5    portion of the ALJ's decision in this Court.  ECF No. 1.

6                                     **LEGAL STANDARD**

7    ***Standard of Review***

8    Congress has provided a limited scope of judicial review of the

9    Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the

10   Commissioner's denial of benefits only if the ALJ's determination was based on

11   legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d

12   993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's]

13   determination that a claimant is not disabled will be upheld if the findings of fact are

14   supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir.

15   1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere

16   scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112,

17   1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir.

18   1989).  Substantial evidence "means such evidence as a reasonable mind might

19   accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

20   401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the

21   [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark*

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 6

*v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

A decision supported by substantial evidence still will be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### *Definition of Disability*

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that the claimant is not only unable to do her previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Thus, the

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 7

definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 8

prevents the claimant from performing work that he has performed in the past. If the claimant can perform her previous work, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy considering her residual functional capacity and age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## ISSUES ON APPEAL

Plaintiff's brief raises the following issues regarding the ALJ's decision:

1.    Did the ALJ erroneously discount Plaintiff's subjective complaints?

2.    Did the ALJ erroneously assess the medical source opinions?

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 9

***Plaintiff's Subjective Statements***

Plaintiff alleged disability due to the following physical and mental health conditions, as summarized in the ALJ's decision:

> In a January 29, 2020, disability report, the claimant alleged disability due to degenerative disc disease in her back; chronic lower back and hip pain; major depression post-traumatic stress disorder (PTSD); anxiety; bipolar disorder; and obsessive-compulsive disorder. In function report forms, the claimant alleged that being around too many people makes her panic. When she gets a panic attack, her chest hurts and she has a hard time breathing. She cannot focus, is easily irritated, and shakes. She alleged severe back pain, and cannot stand, walk, or sit for long periods of time. She has difficulty lifting, stooping, and bending. She must constantly lie down and change positions. She can lift only five to ten pounds and can stand only 10 to 15 minutes at a time.

> At the July 12, 2021, hearing, the claimant testified that she unable to work because she struggles with mental issues as well as physical issues. She stated that she cannot lift heavy things due to pain. She is unable to play with her children. She struggles with anxiety and understanding people. She experiences a lot of flashbacks. Her medication only does so much. She has more bad days than good days. The claimant alleged memory issues and that she needs constant reminders of appointments. She struggles with concentration and receiving instructions. She can sit for ten minutes before needing to lie down. The claimant lives with four of her five minor children (ages 1, 3, 5 and 10); her fiancé; and her fiancé's two minor children (ages 13 and 16). She has a driver's license and drives to appointments and the grocery store. Her stepdaughter accompanies her to the grocery store. The claimant stated that she spends most of her day in bed.

> Her stepdaughter and stepson help care for the other children. Some days the claimant goes without a shower or eating. She wears the same outfit every day. She can sit down and do laundry but does not do yardwork. The claimant goes grocery shopping once a month. The family has three dogs, but the claimant stated that she does not help care for them.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 10

In a January 2, 2024, brief from her attorney, the claimant alleges that she cannot work on a consistent basis because of mental impairments, with symptoms that include poor concentration, severe anxiety, flashbacks of prior trauma, and difficulty interacting with other people. She often stays in bed due to depression. The brief also reflects allegations of low back pain, coccyx pain, and weakness in the extremities causing problems in areas such as walking, standing, and reaching. She stated that she fell at times because of her musculoskeletal symptoms, and she spent most of the day in bed because of her pain.

At the January 23, 2024, hearing, the claimant essentially reiterated her allegations from the prior hearing, except she testified that her symptoms had worsened. Her physical symptoms were
worse; she had more bad days than good days regarding her pain symptoms. She takes pain medications, but still cannot go out for walks and some days cannot get out of bed because she has no feeling in her left leg. She falls at times and cannot drive long distances. She needs help from her significant other to get in and out of the shower or the bathtub. Most of her days are "bad days" regarding her pain symptoms.

The claimant testified that her primary care provider Carissa Dahl, ARNP, referred her to neurologists, and she saw the neurologists in 2021. They recommended spine injections, but she has not been able to have the injections because she cannot drive long enough to reach the neurosurgeon, who is in Issaquah, WA. She has not sought treatment at a closer facility because Nurse Dahl said that the providers in Issaquah are the best. The only treatment she currently uses for back pain is medication prescribed by Nurse Dahl.

She testified that her mental health has "gotten really bad." She stated that she has up and downs, but also stated that most days are the same regarding her mental symptoms. About every other day she stays in bed all day and does not eat or drink anything. If she is having a day when she cannot get out bed, she cannot not go to the grocery store unless her significant other goes with her.

The claimant further testified that she returned to mental health counseling a few weeks ago with Comprehensive Mental Health. She had stopped counseling in 2020 because she was not interested in

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 11

1

2

3

4

trauma-based treatment that required her write and talk about her trauma. She is not taking medications for her mental symptoms. The clamant lives with her significant other; his son; her daughters from a prior relationship; and two more children born to her and her significant other. There are a total of five children in the house. The youngest children are 4, 6, and 8 years old. The claimant testified that her significant other works, so she depends on her 12-year-old stepson and her 15-year-old daughter to take care of the three younger children.

5

.

AR 817–18 (citing AR 212– 21, 246–53, 263–70, 309, 1102–04).

6

7

The ALJ's reasoning in discounting these allegations included that Plaintiff's

8

symptoms were undermined by Plaintiff's ability to independently engage in regular

9

activities; unemployment unrelated to disability; conservative treatment and

10

Plaintiff's lack of follow up on referrals for physical therapy; and objective medical

11

evidence that is only partially consistent with Plaintiff's claimed physical and mental

12

impairments. AR 819–23.

13

In deciding whether to accept a claimant's subjective pain or symptom

14

testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d

15

1273, 1281 (9th Cir. 1996). First, the ALJ must evaluate "whether the claimant has

16

presented objective medical evidence of an underlying impairment 'which could

17

reasonably be expected to produce the pain or other symptoms alleged.'"

18

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.

19

Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). The claimant "need not show that her

20

impairment could reasonably be expected to cause the severity of the symptom she

21

has alleged; she need only show that it could reasonably have caused some degree of

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 12

1  the symptom." *Smolen*, 80 F.3d at 1282.  Second, if the first test is met and there is

2  no evidence of malingering, "the ALJ can reject the claimant's testimony about the

3  severity of her symptoms only by offering specific, clear and convincing reasons for

4  doing so." *Id.* at 1281.  Thus, "the ALJ may not reject subjective symptom

5  testimony . . . simply because there is no showing that the impairment can

6  reasonably produce the degree of symptom alleged." *Id.* at 1282.

7        Plaintiff argues that the ALJ did not provide specific, clear, and convincing

8  reasons to discount her subjective symptom complaints in several respects.  ECF No.

9  8 at 3–4.   The Court addresses the various reasons offered by the ALJ in turn.

10                    <u>Daily Activities</u>

11        Plaintiff contends that in finding that Plaintiff's allegations are inconsistent

12  about her daily activities as a primary caregiver to her children, the ALJ made

13  assumptions about "what young children may require without citation to the record."

14  *Id.* at 3 (citing *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017)).  Plaintiff

15  counters that the record instead provides an explanation for how Plaintiff's young

16  children received care or cared for themselves despite her limitations.  *Id.* at 3–4.

17  (citing AR 71–72, 78–80, 82, 306, 343, 544, 552, 567, 585, 591, 724, 733, 756, 786,

18  844, 1152, 1154, 1345, and 1386).  Plaintiff also argues that the ALJ's finding that

19  she did not cancel or reschedule medical visits often does not undermine her claim

20  that she only goes out for appointments and a rare store trip and that she has good

21  and bad days.  *Id.* at 4 (citing AR 241, 822, 843–45 and 1118).

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 13

The Commissioner responds that the ALJ reasonably discounted Plaintiff's subjective complaints by identifying a range of Plaintiff's activities that conflicted with the severity of debilitation she claims from her physical and mental conditions. ECF No. 16 at 4–5.  Specifically, the Commissioner contends that Plaintiff's ability to drive herself on a regular basis, attend to self-care, prepare meals, do dishes and laundry, clean her home, grocery shop, schedule her own medical appointments, and renew her prescriptions undermines that her impairments are disabling.  *Id.* (citing AR 299, 542, 595, 604, 623–25, and 743).  The Commissioner also submits that the record supports that the Plaintiff repeatedly reported that she is the primary caregiver for her children and further supports that Plaintiff "did not miss or cancel medical appointments 'at a frequency consistent with her allegations of having to remain in bed most days or every other day.'"  *Id*. at 6 (citing AR 820).

Plaintiff replies that the laundry list of very basic activities that the Commissioner provides does not clearly contradict Plaintiff's testimony.  ECF No. 17 at 2.  Plaintiff further argues that the Commissioner's arguments with respect to Plaintiff's care for her children ignore "that the ALJ: 1.) relied not on record evidence, but rather on suppositions as to childcare; 2.) did not consider evidence she had childcare by 2022 and help from the older children and sometimes her partner, and 3.) failed to consider the manner in which she performed these minimal activities and that she did not do anything on bad days."  *Id.*  Lastly, Plaintiff asserts

that the Commissioner's premise is incorrect regarding Plaintiff's ability to attend medical appointments.

With respect to daily activities, an ALJ's reasoning will be upheld if the ALJ cites to substantial evidence showing that a claimant's activities contradict her testimony or that Plaintiff has transferable work skills. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ found that Plaintiff's ability to drive herself on a regular basis undermines her allegations of physical pain and weakness in her extremities, as well as her claims of concentration problems. AR 819. The ALJ further found that Plaintiff can attend to self-care, prepare meals, wash dishes, do laundry, clean her house, and shop for groceries, and cited to substantial evidence to support this finding. AR 819 (citing AR 624)[4]. However, the ALJ does not explain how either the driving or the daily self-care activities translate to the ability to perform full-time work and does not quantify the amount of time per day Plaintiff spends on these activities. *See Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that an ALJ may give less weight to allegations of disabling pain based on a claimant's ability to spend a substantial part of their day in activities that would translate to a workplace setting).

---

[4] The Court notes that the record cited by the ALJ indicates that Plaintiff reported preparing her own meals, not meals for others, in November 2020. AR 623–24.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 15

1      Five children lived in Plaintiff's household, ages four, six, eight, twelve, and

2  fifteen years old, at the time of the January 2024 hearing.  AR 849–50.  The ALJ

3  found that Plaintiff can "manage the care of multiple children on a consistent basis."

4  AR 819.  The ALJ made numerous findings about what is required in taking care of

5  "children, especially young children," including "regular lifting and handling of the

6  children for activities such as changing diapers, putting on clothing, bathing, and

7  putting the children in car seats and highchairs."  AR 820.  The ALJ found that

8  "claimant would not be able to perform the above activities if she were as impaired

9  as she alleges. This includes her allegations of remaining in bed every other day and

10  being unable to lift more than 10 pounds."  AR 820.

11      However, the ALJ does not cite records supporting that Plaintiff has

12  performed those activities. The ALJ relied on a December 2019 physician's note

13  indicating that Plaintiff could work no more than part-time because she is

14  responsible for giving her child with a serious medical condition medication and

15  taking her to medical appointments.  AR 298–99, 819.  The ALJ also cites to records

16  in which Plaintiff either reported being the primary caregiver to her children or

17  describes desiring a break from being the primary parent.  AR 819–20.  However,

18  none of these records supports that Plaintiff reported doing the activities that the

19  ALJ assumed that she performed.  *See* AR 299 (Plaintiff's daughter's physician

20  stating that Plaintiff was her daughter's primary caregiver and managed her

21  daughter's medications and accompanied her to medical appointments); 386

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 16

1    (treatment note indicating that Plaintiff was accompanied by children at her own

2    appointment); 542 (February 2019 counseling record in which Plaintiff reported

3    desiring a occasional break from parenting); 544 (February 2019 record in which

4    Plaintiff reports wanting her significant other to help more with parenting); 562 (July

5    2019 record in which Plaintiff reported doing most of the parenting alone); 595

6    (March 2020 record in which Plaintiff reported falling down stairs, hurting herself,

7    and needing relief "since she has multiple young children at home"); 604 (mental

8    health treatment plan indicating that Plaintiff's lack of daycare and responsibility for

9    the majority of childcare were barriers); 1152 (January 2023 form on which Plaintiff

10   reported taking her kids to school and that her kids could "all do their own car

11   seats"); 1278 (November 2022 appointment notes indicating that Plaintiff's two-

12   year-old daughter was present); and 1314 (appointment notes indicating that being

13   the caregiver "for her sick daughter and other kids" was "exacerbating her mental

14   health").

15          Moreover, the records in which Plaintiff reported doing most of the parenting

16   alone were approximately five years before the January 2024 hearing testimony that

17   the ALJ was rejecting, and several of the records actually support Plaintiff's

18   allegations that she stays in bed much of the day, her mental health interferes with

19   her ability to care for her children, and the children must do things for themselves

20   like getting into their own car seats.  *See* AR 542, 544, and 1152.

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 17

1    Furthermore, the ALJ does not cite to substantial evidence in rejecting

2    Plaintiff's testimony that she relies on the older children to care for the younger

3    children when her significant other is away at work.  The ALJ writes that Plaintiff

4    "testified in January 2024 that, when her significant other is away at work *during the*

5    *day*, she relies on her two older children . . . to take care of the younger children."

6    AR 820.  The ALJ did not credit Plaintiff's testimony because (1) "the claimant did

7    not explain who would take care of the younger children, other than the claimant,

8    when the older children were in school"; and (2) "[i]n any event, the claimant's

9    testimony that she relies on her older children to help with childcare is wholly

10    unsupported and is inconsistent with the claimant's reports throughout the record

11    that she is responsible for taking care of the children."  AR 820.

12    However, upon examination of the hearing transcript, the ALJ

13    mischaracterizes Plaintiff's testimony in that she did not state that her older children

14    care for the younger children "during the day," just that they care for the younger

15    children when Plaintiff's significant other is at work.  AR 850.  The ALJ also did not

16    ask Plaintiff who cares for the younger children while the oldest children are at

17    school, and at six and eight years old, two of the three younger children are school

18    age themselves.  AR 850.  In addition, the ALJ's finding overlooks that Plaintiff

19    reported in April 2022 that her children who were not in school attended daycare.

20    AR 1116.  She also reported at that time that her significant other or the oldest child

21    helped her care for the younger children when they were not at school or daycare.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 18

1  AR 1116.  The Court does not find substantial evidence to back up the ALJ's finding

2  that Plaintiff's testimony regarding receiving help from her significant other and her

3  older children in caring for her younger children is "wholly unsupported and . . .

4  inconsistent with the claimant's reports throughout the record that she is responsible

5  for taking care of the children."  *See* AR 820.

6      The Court finds that the ALJ did not cite to substantial evidence to support his

7  assessment of the relationship between Plaintiff's daily activities and her subjective

8  symptom complaints.

9              <u>Unemployment Unrelated to Disability</u>

10      Next, Plaintiff questions whether the ALJ cited to substantial evidence to

11  support the finding that Plaintiff was unemployed unrelated to disability.  ECF No. 8

12  at 5.  Plaintiff argues that while the ALJ reasoned that Plaintiff's work hours were

13  limited due to lack of childcare, "she had daycare by 2022 at the latest."  AR 1116.

14  Moreover, Plaintiff asserts that only one assessment, in 2019, found that Plaintiff

15  could do only part-time work due to one of her children's health conditions.  *Id.* at 5.

16  Plaintiff maintains that the fact that Plaintiff's "child has also gotten sick is

17  ultimately not a basis to deny disability."  *Id.*

18      The Commissioner does not dispute this alleged error.  *See* ECF No. 16.

19      The ALJ found that the evidence in Plaintiff's record "suggests that the

20  claimant's unemployed status is due to factors other than her alleged impairments."

21  AR 820.  The ALJ specified that Plaintiff's childcare responsibilities and inability to

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 19

1    obtain daycare would reasonably prevent her from working outside the home."  AR

2    820.

3        The records that the ALJ cites include a December 2019 letter from Plaintiff's

4    daughter's physician stating that Plaintiff was her daughter's primary caregiver and

5    managed her daughter's medications and accompanied her to medical appointments,

6    ECF No. 299, and a page of a Washington State Department of Social and Health

7    Services form on which Plaintiff indicated that her mental and physical conditions

8    limit her ability to work, ECF No. 1207.  The December 2019 letter does not support

9    that Plaintiff was not working because she could not obtain daycare for her young

10   children, and the ALJ overlooked that Plaintiff reported in April 2022 that her

11   children who were not in school attended daycare.  AR 1116.  Consequently, the

12   ALJ did not cite to substantial evidence in finding that Plaintiff was not working for

13   reasons other than her alleged impairments.

14                          <u>Injuries from Falls</u>

15       Third, Plaintiff maintains that the ALJ's finding that no sources noted injuries

16   from falls is inaccurate.  ECF No. 8 at 5 (citing AR 821).  Plaintiff points to medical

17   records that she had tenderness and distress after falls in March 2020, April 2020,

18   and November 2021.  *Id.* at 5–6 (citing AR 595–96, 613, 756–57, and 1417).

19   Plaintiff adds that it is not an inconsistency "[t]hat she has not had injuries with

20   every fall[.]"  *Id.* at 6.

21       The Commissioner does not dispute this alleged error.  *See* ECF No. 16.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 20

1    The ALJ found that Plaintiff's "presentation was unremarkable even when she

2    reported an extreme pain level." AR 821. The ALJ further found, in relevant part,

3    that "[n]either the treatment notes from [Plaintiff's primary care provider Carissa

4    Dahl, ARNP] nor any other provider reflects [sic] injuries from falls that corroborate

5    the claimant's report that she frequently falls due to back pain and leg numbness."

6    AR 821.

7    However, as Plaintiff argues, records from ARNP Dahl, another provider, and

8    a radiology report show that Plaintiff was treated for symptoms and injuries from

9    reported slips or falls in March 2020, April 2020, and November 2021. AR 595–96,

10    613, 756–57, and 1417.

11    The Court does not find substantial evidence to support the ALJ's

12    determination that Plaintiff's reports of falls are uncorroborated by the record.

13    <u>Conservative Treatment</u>

14    In addition, Plaintiff argues that her treatment for pain was not conservative

15    because it has included narcotics and other medications that go beyond that over-the-

16    counter ibuprofen that courts have found to amount to conservative treatment. ECF

17    No. 8 (citing *Carmickle v. Comm'r,* 533 F.3d 1155, 1162 (9th Cir. 2008); *Lapeirre-*

18    *Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010). Plaintiff continues that her

19    narcotics have increased in dosages over time, which the Social Security

20    Administration has recognized may support that a claimant's "'symptoms are a

21

1    source of distress and may show that they are intense and persistent.'"  ECF No. 8 at

2    8 (citing Social Security Ruling 16-3p).

3         The Commissioner responds that despite Plaintiff's allegations of disabling

4    physical symptoms, she required only conservative treatment from her providers

5    with no surgical intervention and only medication management for continued pain.

6    ECF No. 16 at 11 (citing AR 821, 825, 1242, 1294–1389, and 1466).  The

7    Commissioner further points out that the ALJ observed that Plaintiff did not follow

8    up on her referrals to physical therapy, which undermines her pain allegations.  *Id.* at

9    12 (citing AR 822, 1378, 1382, and 1386).  The Commissioner recognizes that

10   Plaintiff maintains that the record lacks physical therapy records because they were

11   not requested and the ALJ had a duty to request those records."  *Id.* (citing ECF No.

12   8 at 9).  However, the Commissioner submits that "the 'duty to develop the record

13   cannot be used to shift the burden of proving disability on the ALJ.'"  *Id.* (quoting

14   *Sarah S. v. Comm'r of Soc. Sec.*, No. 23-CV-1705, 2024 WL 3064612, at *4 (W.D.

15   Wash. Jun. 20, 2024)).

16        Plaintiff replies that the record supports Plaintiff was in physical therapy, and

17   the ALJ introduced the ambiguity by doubting Plaintiff's truthfulness to her

18   providers.  ECF No. 17 at 4.  Plaintiff submits that "remand is therefore necessary to

19   properly assess [Plaintiff's] testimony only *after* having first requested the PT

20   records."  *Id.*

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 22

1    The ALJ found that Plaintiff required only conservative treatment for her

2    physical impairments, and she did not follow up on referrals for physical therapy.

3    AR 821–22.  The ALJ further questioned Plaintiff's transparency with her primary

4    care provider: "She told Nurse Dahl that she started physical therapy but got sick

5    and had to stop. However, this is a misleading report by the claimant because the

6    record shows that she never followed up with physical therapy referrals and never

7    attended any physical therapy."  AR 822 (citing AR 1371)

8    The treatment note that the ALJ cited does not support that Plaintiff "never

9    followed up" with physical therapy referrals; it just supports that Plaintiff reported

10    that she did not complete her course of physical therapy because her pain was

11    worsening with therapy, and she and her family got sick, which also inhibited her

12    from continuing with the therapy.  AR 1371.  Plaintiff further recounts several notes

13    in the record indicating that Plaintiff was pursuing physical therapy in 2019 and

14    2020, and the ALJ could have requested physical therapy records if he doubted the

15    veracity of these reports.  ECF No. 8 at 9 (citing AR 343, 345, 347, 349, 386, 550,

16    552, and 596).  The Court finds that substantial evidence does not support the ALJ's

17    reasoning with respect to physical therapy.

18    Moreover, Plaintiff is correct that a Social Security claimant's treatment is not

19    conservative merely because the prescribed treatment is non-surgical.  *See O'Connor*

20    *v. Berryhill*, 355 F.Supp.3d 972, 985 (W.D. Wash. Jan. 2019) (determining that pain

21    treatment with opioid analgesics is not conservative and citing *Kager v. Astrue*, 256

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 23

F. App'x 919, 923 (9th Cir. 2007) (rejecting adverse credibility determination premised on the absence of significant pain therapy where the claimant took prescription pain medications including Methocarbomal and the narcotic analgesics Roxicet and Valium); *Hanes v. Colvin*, 651 F. App'x 703, 706 (9th Cir. 2016) (narcotic painkillers along with spinal injections and radiofrequency ablation not conservative), *Abbott v. Astrue*, 391 F. App'x 554, 560 (7th Cir. 2010) (describing hydrocodone as a "strong pain reliever")).  The Commissioner does not dispute that Plaintiff's treatment for her alleged pain was not limited to over-the-counter medications and instead included prescriptions for various narcotics, at increasing dosages over time.  *See* AR 361, 389, 596, 1253, 1305, 1348, and 1361.  Here, the ALJ reasoned that Plaintiff's treatment for her pain complaints has been conservative because it was limited to medication, and the ALJ cited to a treatment record memorializing that Plaintiff discussed an epidural steroid as an option at a neurosurgical consult.  *See* AR 821, 1242.  The Court finds that the ALJ's reasoning with respect to Plaintiff's conservative treatment is untenable and unsupported by substantial evidence.

<u>Objective Medical Record</u>

Finally, Plaintiff argues that the ALJ could not rely solely on objective physical evidence to discredit Plaintiff's subjective symptom statements, and, in any case, Plaintiff's record indicates that she presented with "many abnormalities."  ECF No. 8 at 6.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 24

1    The Commissioner responds that the ALJ relied on substantial evidence in

2    finding that Plaintiff's "allegations of disability were inconsistent with the objective

3    medical evidence." ECF No. 16 at 8. The Commissioner cites the Court to the

4    records showing no focal neurological deficits and minimal abnormalities that do not

5    support Plaintiff's alleged musculoskeletal symptoms such as back and tailbone pain

6    and pain and numbness in Plaintiff's left leg. *See id.* at 8–9 (citing AR 595–96,

7    634–785, 724–25, 751, 821, 1242, 1294–1389, and 1464–66). The Commissioner

8    also cites to records that Plaintiff presented for mental status exams with little to no

9    abnormality in her affect, speech, behavior, concentration, and judgment to support

10    the ALJ's assessment that the objective medical record does not support the severity

11    of Plaintiff's mental symptom complaints. *Id.* at 9 (citing AR 727, 735, 741, 747,

12    1241, 1272, 1275, 1279, 1282, 1289, and 1292).

13    Plaintiff replies that the Commissioner's arguments are unpersuasive because

14    an ALJ is not permitted deference to an interpretation that is incomplete, based on a

15    selective view of the record, and a "mischaracterization where it has ignored

16    significant evidence to reach that conclusion." ECF No. 17 at 5 (citing *Garrison v.*

17    *Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) ("While ALJs obviously must rely on

18    examples to show why they do not believe that a claimant is credible, the data points

19    they choose must *in fact* constitute examples of a broader development to satisfy the

20    applicable 'clear and convincing' standard.") (emphasis in original).

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER
PROCEEDINGS ~ 25

Because the Court already has found that the ALJ erred with respect to the other bases the ALJ offered for discounting Plaintiff's subjective symptom testimony, even if the ALJ relied on substantial evidence in finding that the objective medical evidence did not support the degree of impairment Plaintiff alleged, that basis alone would be insufficient. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) ("[B]ecause subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone," the ALJ may not discredit a subjective description "solely because it is not substantiated affirmatively by objective medical evidence.").

Having found several errors in the primary reasons offered by the ALJ for discounting Plaintiff's testimony, the Court concludes that the ALJ failed to provide sufficient clear and convincing reasons. These errors were not harmless in that they could have affected the ALJ's assessment of Plaintiff's subjective symptom testimony, which describes disabling impairments. As reversible error already has been shown, the Court does not proceed to analyze the remaining allegations of error with respect to medical source opinions and instead proceeds to determine the appropriate remedy.

### *Remedy*

The Ninth Circuit Court of Appeals has held that "[a] district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 26

circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (quotations omitted). A court should take the exceptional step of remanding for an immediate award of benefits only where:

> (1) The ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence [probative of disability], (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (internal quotation omitted).

By contrast, remand is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). Plaintiff does not propose that an ALJ would be required to find the claimant disabled were her subjective complaints credited and does not request that her subjective complaints be credited as true. *See* ECF Nos. 8, 17. In addition, the record leaves room for interpretation, and the reevaluation of Plaintiff's testimony is warranted given the ALJ's numerous errors in his evaluation of it.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ reversibly erred with respect to the assessment of Plaintiff's subjective symptom testimony and remand is required. Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Opening Brief, **ECF No. 8**, is **GRANTED**.

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 27

1    2. Defendant the Commissioner's Brief, **ECF No. 16**, is **DENIED**.

2    3. The decision of the Commissioner is **REVERSED**, and this matter is

3       **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. §

4       405(g), for further proceedings.

5    4. Judgment shall be entered for Plaintiff.

6    5. The District Court Clerk shall amend the docket in this matter to substitute

7       Leland Dudek as the Acting Commissioner of the Social Security

8       Administration.

9    **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

10 Order, enter judgment and amend the caption as directed, provide copies to counsel,

11 and **close the file**.

12    **DATED** April 29, 2025.

13

14                  *s/ Rosanna Malouf Peterson*
                      ROSANNA MALOUF PETERSON
                      Senior United States District Judge

15

16

17

18

19

20

21

ORDER GRANTING PLAINTIFF'S BRIEF AND REMANDING FOR FURTHER PROCEEDINGS ~ 28